**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS** (SBN: 310209)
  trichards@singhtraubenlaw.com
**MICHAEL A. TRAUBEN** (SBN: 277557)
  mtrauben@singhtraubenlaw.com
400 S. Beverly Drive, Suite 240
Beverly Hills, California 90212
Tel: 310.856.9705 | Fax: 888.734.3555

*Attorneys for Defendants/Counterclaimants*
RANCHO HUMILDE ENTERTAINMENT, LLC,
JAIME (JIMMY) HUMILDE, ROQUE VENEGAS
*and* JOSE (JB) BECERRA

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ERICK DE JESUS ARAGON ALCANTAR, an individual,<br><br>            Plaintiff,<br><br>    v.<br><br>RANCHO HUMILDE ENTERTAINMENT, LLC, a California limited liability company; ROQUE VENEGAS, an individual; JAIME (JIMMY) HUMILDE, an individual; JOSE (JB) BECERRA, an individual; ALEXIS AGUIRRE, an individual; IVAN RAMIREZ, an individual; GIOVANNI RODRIGUEZ MEZA, an individual; and DOES 1 through 10, INCLUSIVE,<br><br>            Defendants. | ) Case No.: **5:25-cv-01445 SSS (DTBx)**<br>)<br>) The Honorable Sunshine S. Sykes<br>) Courtroom 2<br>)<br>) **DEFENDANTS RANCHO HUMILDE**<br>) **ENTERTAINMENT, LLC, JAIME**<br>) **(JIMMY) HUMILDE, ROQUE VENEGAS,**<br>) **AND JOSE (JB) BECERRA'S NOTICE OF**<br>) **MOTION AND MOTION TO STAY**<br>) **PROCEEDINGS PENDING RESOLUTION**<br>) **OF RELATED ADMINISTRATIVE**<br>) **NULLITY PROCEEDING BEFORE THE**<br>) **INSTITUTO MEXICANO DE LA**<br>) **PROPIEDAD INDUSTRIAL**<br>)<br>) [Declarations of Mauricio Rafael Vergara<br>) Barrios, Thomas K. Richards, and Justin R.<br>) Trauben and [Proposed] Order filed<br>) concurrently herewith]<br>)<br>) **Hearing Date:**    June 26, 2026<br>) **Hearing Time:**    2:00 p.m.<br>) **Location:**         Courtroom 2 |

1

SINGH,
SINGH &
TRAUBEN,
LLP

**TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on **June 26, 2026** at **2:00 p.m.**, or as soon thereafter as this matter may be heard in **Courtroom 2** of the above-entitled Court, located at **3470 Twelfth Street**, **Riverside**, **California 92501**, defendants and counterclaimants Rancho Humilde Entertainment, LLC ("**Rancho**"), Jaime (Jimmy) Humilde ("**Humilde**"), Roque Venegas ("**Venegas**"), and Jose (JB) Becerra ("**Becerra**") (collectively, "**Defendants**") will, and hereby do, move this Court for an order staying all proceedings in this action, including discovery and all pretrial deadlines, pending resolution of the administrative nullity proceeding filed on February 26, 2026, before the Instituto Mexicano de la Propiedad Industrial ("**IMPI**"), by four of the founding members of the Grupo Codiciado de facto partnership, Alexis Cañez Aguirre, Arturo Núñez, Iván Ramírez, and Giovanni Rodríguez Meza, seeking administrative nullity (cancellation) of Mexican Trademark Registration No. 2642296 ("**CODICIADO**") held by plaintiff Erick De Jesus Aragon Alcantar ("**Alcantar**" or "**Plaintiff**"). This motion is made pursuant to the Court's inherent authority to manage its docket as recognized in *Landis v. North Am. Co.*, 299 U.S. 248 (1936). Defendants respectfully request that the Court:

(1)    Stay all proceedings, including discovery and pretrial deadlines, pending issuance of a final decision by the IMPI in the nullity proceeding;

(2)    Direct the parties to file a joint status report within fourteen (14) days of any IMPI decision, advising the Court of the substance of the decision and proposing a schedule for further proceedings; and

(3)    Set a status conference for the earlier of February 27, 2027, or thirty (30) days following the parties' filing of the joint status report.

This motion is based upon this notice of motion, the accompanying memorandum of points and authorities in support thereof, the concurrently filed declaration of Mauricio Rafael Vergara Barrios, a Mexican trademark attorney with Bert & Bafeli Law Group in Zapopan, Jalisco, Mexico, explaining the nature, status, and expected timeline of the

IMPI proceeding, as well as the declarations of Thomas K. Richards and Justin R. Trauben, the pleadings and papers on file in this action, any matters of which the Court may take judicial notice, and any further argument or evidence as may be presented before or at the hearing on this motion.

This motion is made following conference of counsel pursuant to L.R. 7-3, which was conducted telephonically on May 12, 2026. Plaintiff's counsel has stated that Plaintiff does not consent to a stay of these proceedings.[1]

**DATED**: May 26, 2026

Respectfully submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS**

By:   /s/ *Thomas K. Richards*
        Thomas K. Richards

***Attorneys for Defendants/Counterclaimants***
RANCHO HUMILDE ENTERTAINMENT, LLC, JAIME (JIMMY) HUMILDE, ROQUE VENEGAS *and* JOSE (JB) BECERRA

---

[1] *See* Declaration of Justin R. Trauben ("**Trauben Decl.**") at ¶¶ 5-11, Ex. "A".

DEFENDANTS' NOTICE OF MOTION AND MOTION TO STAY
CIVIL ACTION NO. **5:25-cv-01445 SSS (DTBx)**

SINGH, SINGH & TRAUBEN, LLP

# TABLE OF CONTENTS

I.    INTRODUCTION ..................................................................................................1

II.   BACKGROUND ...................................................................................................3

    A.    The Marks, the Partnership, and the U.S. Litigation...................................3

    B.    The Counterclaims: Fraud in Procurement and Lack of Ownership .........3

    C.    The IMPI Nullity Proceeding and Its Direct Overlap with This Case.......5

    D.    The IMPI Proceeding and This Action Share the Same Threshold Issues and Evidentiary Record ....................................................................6

III.  LEGAL STANDARD .........................................................................................9

    A.    The Court's Inherent Authority to Stay Proceedings.................................9

    B.    The *Landis* Factors ...................................................................................10

IV.   ARGUMENT.......................................................................................................10

    A.    The IMPI Proceeding Examines the Same Threshold Questions of Ownership, Prior Use, and Fraudulent Procurement ...............................10

        (1)   IMPI and This Court Are Examining the Same Factual Questions on the Same Evidence...................................................10

        (2)   The False Declaration Contradiction Lies at the Heart of Both Proceedings ................................................................................11

        (3)   IMPI's Decision May Materially Simplify or Resolve Key Issues Before This Court.............................................................12

    B.    The Balance of Hardships Strongly Favors a Stay .................................13

        (1)   Defendants Face Concrete and Substantial Hardship Absent a Stay..........................................................................................13

        (2)   Alcantar Faces No Material Prejudice from a Temporary Stay of Reasonable Duration...............................................................14

    C.    A Stay Will Serve the Orderly Course of Justice....................................15

    D.    Comity Considerations Further Support the Stay ....................................16

V.    CONCLUSION....................................................................................................17

SINGH, SINGH & TRAUBEN, LLP

TABLE OF CONTENTS AND AUTHORITIES

# TABLE OF AUTHORITIES

## FEDERAL CASES

**U.S. Supreme Court**

*Clinton v. Jones*, 520 U.S. 681 (1997)................................................................9

*Hilton v. Guyot*, 159 U.S. 113 (1895).............................................................16

*Landis v. North American Co.*, 299 U.S. 248 (1936) ...............................passim

*Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) ......................14

**U.S. Circuit Court**

*Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668 (9th Cir. 1988) ....................14

*CMAX, Inc. v. Hall*, 300 F.2d 265 (9th Cir. 1962) .......................................10

*Lockyer v. Mirant Corp.*, 398 F.3d 1098 (9th Cir. 2005) ..............................10

## RULES AND CODES

15 U.S.C. § 1051 ...........................................................................................5

15 U.S.C. § 1064(3) .......................................................................................5

15 U.S.C. § 1119 ........................................................................................5, 6

SINGH, SINGH & TRAUBEN, LLP

TABLE OF CONTENTS AND AUTHORITIES

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I.   INTRODUCTION

The central issue in this case is whether plaintiff Erick De Jesus Aragon Alcantar ("**Alcantar**" or "**Plaintiff**") is the sole owner of the marks CODICIADO and GRUPO CODICIADO, or whether those marks belong to the five-member musical collective that created and commercially exploited them beginning in 2015. That same threshold question of ownership, prior collective use, and the truthfulness of Alcantar's representations is now also pending before the Instituto Mexicano de la Propiedad Industrial ("**IMPI**"). Because the IMPI proceeding directly addresses the foundational factual questions at the heart of both Plaintiff's claims and Defendants' counterclaims, this Court should exercise its inherent authority to stay these proceedings pending IMPI's determination.

This overlap stems from Alcantar's own contradictory positions. In or around 2015, five musicians formed a musical group in Tijuana, Baja California, Mexico, commercially known as "Grupo Codiciado." The group operated as a de facto partnership, or *Sociedad de Hecho*, under Mexican law, meaning the five members jointly created and owned the marks and goodwill from the beginning, even without formal registration. On October 21, 2016, the group entered into a recording contract with Rancho Humilde Entertainment, LLC that expressly defined "*El Artista*" as all five members collectively, a clear recognition that the marks and the enterprise belonged to the group as a whole.

The musical group separated in or about 2021. The partnership was never formally dissolved, and neither the marks nor the catalog was ever divided or assigned to any individual member. Nonetheless, Alcantar obtained three U.S. trademark registrations in his individual name, with registration dates ranging from December 2019 to May 2024.[1] In each application, however, Alcantar misrepresented to the United States Patent and Trademark Office ("USPTO") that the marks had first been used in commerce on February

---

[1] The registrations are Reg. No. 5,924,994 (GRUPO CODICIADO word mark), registered December 3, 2019; Reg. No. 6,099,877 (GRUPO CODICIADO design mark), registered July 14, 2020; and Reg. No. 7,383,957 (CODICIADO), registered May 14, 2024. [ECF 24-1].

SINGH,
SINGH &
TRAUBEN,
LLP

11, 2013, more than two years before the musical group was even formed.

Alcantar went even further in Mexico. In July 2023, he filed an application for Mexican Trademark Registration No. 2642296 for the mark "CODICIADO." In that application, he affirmatively declared that he had "not used" the mark. That representation allowed him to obscure the group's prior collective use and avoid disclosing his former bandmates' rights in the mark.

Yet just sixteen months later, in November 2024, Alcantar initiated an arbitration action against Rancho Humilde Entertainment, LLC before the American Arbitration Association (AAA Case No. 01-24-0008-9161), seeking to enforce rights under an October 21, 2016 recording contract his group had collectively entered with Rancho Humilde Entertainment, LLC. In that AAA proceeding, because the recording contract formed the foundation for his claims seeking royalties and other relief, Alcantar affirmatively relied on that same October 21, 2016 recording contract as evidence of commercial use of the mark since at least that date. These two positions cannot both be true.

On February 26, 2026, four of the founding members of Grupo Codiciado filed a Petition for Administrative Declaration of Nullity before the IMPI, seeking cancellation of Alcantar's Mexican registration. The IMPI petition raises four grounds for nullity, each of which directly tracks core issues in Defendants' counterclaims for fraud in procurement and lack of ownership: prior collective use, bad faith, appropriation without consent, and false declaration of non-use. IMPI is now examining whether Alcantar's representations regarding non-use and sole ownership were accurate, and whether the mark was in fact used collectively long before his application.

Absent a stay, this Court and IMPI would simultaneously adjudicate the same threshold questions of ownership, prior collective use, and fraudulent procurement on substantially the same evidentiary record. This parallel litigation would impose duplicative burdens on the parties and create a substantial risk of inconsistent factual findings and determinations along with unnecessary duplication of effort and expense.

The balance of hardships also strongly favors a stay. Trial in this action is not

scheduled until March 2027. Although Plaintiff filed two *ex parte* applications for a temporary restraining order in June 2025, both were denied. [ECF 27, 30]. He has not sought any emergency relief in the nearly one year since.[2] By contrast, absent a stay, Defendants will be required to engage in full discovery in this Court on the same threshold issues of ownership, prior collective use, and fraudulent procurement already being examined in the IMPI proceeding.

For these reasons, Defendants respectfully request that the Court stay all proceedings in this action pending resolution of the IMPI nullity proceeding, with a status report to be filed within fourteen (14) days of the IMPI's decision.

## II.   BACKGROUND

### A.   The Marks, the Partnership, and the U.S. Litigation

In or around 2015, five musicians formed a musical group in Tijuana, Baja California, Mexico, commercially known as "Grupo Codiciado." The five founding members — Plaintiff Alcantar, Alexis Cañez Aguirre, Arturo Núñez, Iván Ramírez, and Geovanny Rodríguez Meza — operated as a de facto partnership, or *Sociedad de Hecho*, under Mexican law. Their collective formation and composition were memorialized in Public Deed No. 9,066. *See* Declaration of Thomas K. Richards ("**Richards Decl.**") ¶¶ 4-5, Ex. "A" at Facts ¶ 1 [IMPI Petition], Ex. "C" at ¶ 1 [AAA Demand].

The collective unanimously adopted the marks "GRUPO CODICIADO" and "CODICIADO" to identify and distinguish the group's entertainment services in the market. (Richards Decl. ¶¶ 4-5, Ex. "A" at Facts ¶¶ 1-3 [IMPI Petition], Ex. "C" at ¶ 1 [AAA Demand]).

The group's first major commercial release was the album "*Si Lo Digo Es Porque Puedo*," released December 9, 2016, under the Rancho Humilde record label. (Richards Decl. ¶ 4, Ex. "A" at Facts ¶ 3 [IMPI Petition]). The October 21, 2016 recording contract

---

[2] Notably, those applications sought relief only in connection with Plaintiff's copyright claims regarding the song "Cuántos Recuerdos." Plaintiff has never sought injunctive relief on his trademark claims, the very claims that overlap with the pending IMPI proceeding.

between the group and Rancho Humilde expressly defines "El Artista" as the collective of all five named individuals: ". . . by and among Emmanuel Rubio Robles, Erick de Jesús Aragón Alcantar, Alexis Alonso Cañez Aguirre, Jair Arturo Núñez Chavarría, Iván Alberto Ramírez Coronado, and Giovanni Rodríguez Meza (GRUPO CODICIADO) (hereinafter referred to as 'The Artist') . . ." (Richards Decl. ¶¶ 4-5, Ex. "A" at Facts ¶ 6 [IMPI Petition], Ex. "C" at ¶ 3 [AAA Demand] and Ex. "A" thereto [October 21, 2016 Recording Agreement]).

That same contract is the document Alcantar himself introduced as "Exhibit B" in his American Arbitration Association arbitration claim filed in November 2024. (Richards Decl. ¶¶ 4-5, Exs. "C" - "D" [AAA Demand]).

The group separated in or about 2021. The partnership was never formally liquidated, and neither the marks nor the catalog was ever divided or assigned to any individual member. (Richards Decl. ¶ 4, Ex. "A" at Facts ¶ 4 [IMPI Petition]). Alcantar himself acknowledged the collective nature of the separation in a 2021 media interview, stating it was "a group decision" because "it's a group—there are many heads." (*Id.* at Facts ¶ 4, Public Reference No. 8 [IMPI Petition]). Despite this, and without any dissolution of the partnership or assignment of its intangible assets, Alcantar unilaterally obtained individual U.S. trademark registrations in his own name, claiming sole ownership and exclusive rights. (*Id.* at ¶¶ 4-5, Ex. "A" at Facts ¶ 4 [IMPI Petition], Ex. "C" at ¶ 1 [AAA Demand]; ECF 24-1).

Following the group's separation, Alcantar obtained three U.S. trademark registrations in his individual name, each claiming a first-use date of February 11, 2013, more than two years before the group was even formed. The registrations are Reg. No. 5,924,994 (GRUPO CODICIADO word mark), registered December 3, 2019; Reg. No. 6,099,877 (GRUPO CODICIADO design mark), registered July 14, 2020; and Reg. No. 7,383,957 (CODICIADO), registered May 14, 2024. [ECF 24-1].

Alcantar filed this action on June 10, 2025, asserting claims for trademark infringement, unfair competition, dilution, and declaratory relief. All his claims rest

SINGH,
SINGH &
TRAUBEN,
LLP

entirely on his asserted exclusive ownership of the three U.S. registrations. Trial is set for March 22, 2027. [ECF 59].

**B.    The Counterclaims: Fraud in Procurement and Lack of Ownership**

On March 19, 2026, defendants and counterclaimants Rancho Humilde Entertainment, LLC ("**Rancho**"), Jaime (Jimmy) Humilde ("**Humilde**"), Roque Venegas ("**Venegas**"), and Jose (JB) Becerra ("**Becerra**") (collectively, "**Defendants**") filed counterclaims seeking cancellation of all three U.S. trademark registrations on two independent grounds: fraud in procurement under 15 U.S.C. §§ 1064(3) and 1119, and lack of ownership under 15 U.S.C. §§ 1051 and 1119. Defendants also seek declaratory relief that Alcantar neither owns the marks nor holds any exclusive rights in them. [ECF 67, *Counterclaim* ¶¶ 12-34].

The fraud counterclaim centers on Alcantar's knowing misrepresentations to the USPTO. In procuring all three registrations, Alcantar falsely represented that he was the sole owner of the marks, that he possessed exclusive rights to use them, and that the marks had first been used in commerce on February 11, 2013, more than two years before the group was even formed. [ECF 24, FAC ¶ 19, ECF 24-1, Ex. "A"; ECF 67, *Counterclaim* ¶¶ 13-16]. However, these representations are directly contradicted by the record. Alcantar himself has acknowledged that he co-founded Grupo Codiciado in 2015 with the other members and that the group collectively created and exploited the marks. (Richards Decl. ¶¶ 4-5, Ex. "A" at Facts ¶¶ 1, 3 [IMPI Petition]; Ex. "C" at ¶ 1 [AAA Demand]).

In his July 2023 application for Mexican Trademark Registration No. 2642296, Alcantar affirmatively declared that he had "not used" the mark CODICIADO. (Richards Decl. ¶ 4, Ex. "A" at Fourth Ground for Nullity). Yet in the arbitration he filed before the American Arbitration Association on November 27, 2024, Alcantar affirmatively relied on the October 21, 2016 Rancho recording contract as evidence of collective commercial exploitation of the mark since at least that date. (Richards Decl. ¶ 5, Ex. "C" at ¶¶ 1, 3 and Ex. "A"). These two positions are irreconcilable, creating a contradiction that lies at the heart of Defendants' fraud-in-procurement counterclaim. The IMPI proceeding will

examine whether Alcantar's declaration of non-use in his Mexican trademark application was false. If IMPI finds that it was, that determination will directly bear on Defendants' claim that Alcantar made material misrepresentations regarding first use and ownership when procuring his U.S. registrations.

The lack-of-ownership counterclaim rests on an even more fundamental point. The marks "GRUPO CODICIADO" and "CODICIADO" embody the collective goodwill of the five-member *Sociedad de Hecho* formed in Tijuana in 2015. The other founding members allege, and Alcantar himself has acknowledged in prior proceedings, that the group operated as a de facto partnership under Mexican law, that the marks were created and used collectively by all five members, and that the partnership was never formally dissolved or its assets assigned to any individual. (Richards Decl. ¶¶ 4-5, Ex. "A" at Facts ¶¶ 1, 3-4, 6 [IMPI Petition], Ex. "C" at ¶¶ 1, 3 [AAA Demand]). Because Alcantar was never the sole owner of that collective goodwill, his subsequent individual registrations are invalid from the outset and subject to cancellation under 15 U.S.C. § 1119.

## C.    The IMPI Nullity Proceeding and Its Direct Overlap with This Case

On February 26, 2026, three weeks before Defendants filed their counterclaims in this action, four of the founding members of Grupo Codiciado filed a Petition for Administrative Declaration of Nullity before the IMPI, seeking cancellation of Alcantar's Mexican Trademark Registration No. 2642296 (CODICIADO, Class 41). The petitioners, Alexis Cañez Aguirre, Arturo Núñez, Iván Ramírez, and Geovanny Rodríguez, are represented by Mexican trademark counsel Mauricio Rafael Vergara Barrios of Bert & Bafeli Law Group.

The IMPI petition asserts four independent grounds for nullity, each of which directly corresponds to a core issue in Defendants' counterclaims: prior collective use, bad faith, appropriation of collective prestige without consent, and false declaration of non-use:

- **Prior Collective Use**: The petition alleges that the mark CODICIADO was used continuously by the de facto partnership since 2015, more than seven years before Alcantar's Mexican application, and submits evidence of collective commercial exploitation through streaming

SINGH, SINGH & TRAUBEN, LLP

platforms, digital sales, and live performances. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at 3-19).

- **Bad Faith**: The petition alleges that Alcantar obtained the Mexican registration in bad faith. As a co-founding member of the de facto partnership who participated in its commercial activities under the mark GRUPO CODICIADO from 2015 until 2021, Alcantar knew that CODICIADO was the collective commercial identity of the partnership, not his individual property, when he applied for individual registration in 2023. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at 41-44).

- **Appropriation Without Consent**: The petition alleges that Alcantar registered an appellation of recognized prestige belonging to the collective entity without the consent of his co-owners, in violation of Mexican public-order protections for collective intellectual property. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at 44-50).

- **False Declaration**: Most critically, the petition alleges that Alcantar affirmatively declared in his Mexican application that the mark had "not been used," a sworn statement directly contradicted by the October 21, 2016 Rancho Humilde recording contract, which is the very document Alcantar himself submitted as evidence of collective use in his U.S. arbitration proceeding. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at 50-56).

A successful determination by IMPI granting nullity would render Registration No. 2642296 void *ab initio*. Under Mexican law, an administrative declaration of nullity does not merely cancel the registration going forward. Instead, it eliminates the registration retroactively, as if it had never been granted. *See* Declaration of Mauricio Rafael Vergara Barrios ("**Barrios Decl.**") ¶ 6.

Because the factual questions central to the IMPI proceeding directly overlap with the ownership and use issues underlying Alcantar's U.S. trademark registrations, a favorable ruling by the IMPI would bear directly on the validity of the registrations at issue in this case.[3]

As of the date of this motion, the IMPI proceeding remains in its early stages. IMPI confirmed receipt of the petition on February 26, 2026, but as of April 28, 2026, had not

---

[3] Notably, two of the four grounds asserted in the IMPI petition, bad faith and false information, constitute absolute nullity under Mexican law and may be asserted at any time. Unlike other grounds, they are not subject to the five-year prescriptive period. (<u>Barrios Decl.</u> ¶¶ 8.b, 8.d).

MEMORANDUM OF POINTS AND AUTHORITIES

SINGH, SINGH & TRAUBEN, LLP

yet formally admitted the petition for processing and notified Alcantar. (<u>Barrios Decl.</u> ¶¶ 7, 9-11). Once IMPI formally admits the petition, Alcantar will have approximately thirty days to file a response. Mexican trademark counsel estimates that IMPI will issue an initial administrative decision within approximately twelve months of filing. That decision can then be appealed through an internal administrative review process within IMPI, followed by a constitutional challenge in the Mexican federal courts if necessary. (*Id.* ¶¶ 13, 15).

**D.   The IMPI Proceeding and This Action Share the Same Threshold Issues and Evidentiary Record**

The IMPI proceeding and this U.S. action are not merely related. They are fundamentally intertwined. Both proceedings turn on the same core factual and legal questions: whether the marks were used collectively by the de facto partnership prior to Alcantar's individual registrations, whether Alcantar made false declarations regarding ownership and first use, and whether he acted in bad faith by seeking to appropriate rights that belonged to the collective.

These overlapping questions lie at the center of both proceedings:

- Whether the marks were used collectively long before Alcantar's individual registrations goes directly to Defendants' lack-of-ownership counterclaim. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at Facts ¶¶ 1, 3-4).

- Alcantar's declaration in his Mexican trademark application that he had "not used" the mark directly contradicts the position he took in the U.S. arbitration and directly supports Defendants' fraud-in-procurement counterclaim. (<u>Richards Decl.</u> ¶¶ 4-5, Ex. "A" at Fourth Ground for Nullity, Ex. "C" at ¶ 3).

- Alcantar's decision to register the marks individually, despite knowing they belonged to the collective, raises the same bad faith issues that lie at the heart of Defendants' fraud claims. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at Facts ¶ 6 and Bad Faith Ground; <u>Barrios Decl.</u> ¶ 8.b).

- Alcantar's appropriation of the collective's prestige and goodwill without his co-owners' consent supports both Defendants' lack-of-ownership counterclaim and their request for declaratory relief. (<u>Richards Decl.</u> ¶ 4, Ex. "A" at Appropriation Ground; <u>Barrios Decl.</u> ¶ 8.c).

Critically, both proceedings rest on the same core evidence: Public Deed No. 9,066 (memorializing the group's formation as a plural collective entity), the October 21, 2016 Rancho Humilde recording contract (defining "El Artista" as all five members), streaming and media evidence of collective commercial use from 2015 through 2021, and Alcantar's own statements in the AAA arbitration acknowledging the collective nature of the enterprise. (Richards Decl. ¶¶ 4, Ex. "A" at Facts ¶¶ 1, 3, and 6, and Fourth Ground for Nullity [IMPI Petition], Ex. "C" at ¶ 3 [AAA Demand]; ECF 67, *Counterclaim* ¶¶ 4-9, 11). Because the two proceedings arise from the same underlying facts, involve the same key documents and witnesses, and address the same threshold questions of ownership, first use, and fraudulent procurement, litigating these issues in this Court while the other members of the musical collective pursue parallel adjudication before IMPI would create a substantial risk of inconsistent factual determinations and unnecessary duplication.

## III.   LEGAL STANDARD

### A.   The Court's Inherent Authority to Stay Proceedings

A federal district court possesses inherent authority to manage its docket, including the power to stay proceedings in one case pending the resolution of another. As the Supreme Court recognized in *Landis v. North American Co.*, this authority exists "to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." 299 U.S. 248, 254 (1936). The power to stay proceedings is not limited to cases involving identical parties or issues. Rather, it extends to situations in which a related proceeding, even one pending in another forum, may simplify or resolve questions before the court. (*Id.* at 254-56).

This inherent authority is well-established and frequently exercised. The Supreme Court has reaffirmed that district courts enjoy broad discretion to stay proceedings as an incident to their power to control their own dockets. *Clinton v. Jones*, 520 U.S. 681, 706 (1997).

///

///

SINGH,
SINGH &
TRAUBEN,
LLP

MEMORANDUM OF POINTS AND AUTHORITIES

**B.    The *Landis* Factors**

In the Ninth Circuit, a district court considering a motion to stay must weigh three factors: (1) the possible hardship or inequity to the moving party if a stay is denied; (2) the possible hardship or inequity to the non-moving party if a stay is granted; and (3) the orderly course of justice, measured by whether a stay would simplify or complicate the issues, proof, and questions of law before the court. *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).

The court must "weigh competing interests and maintain an even balance." *Landis*, 299 U.S. at 254–55. A stay is particularly appropriate where, as here, a parallel proceeding addresses foundational questions that may materially simplify or resolve the issues before the court, the balance of hardships strongly favors a stay, and the non-moving party will suffer no material prejudice.

## IV.    ARGUMENT

**A.    The IMPI Proceeding Examines the Same Threshold Questions of Ownership, Prior Use, and Fraudulent Procurement**

**(1)    IMPI and This Court Are Examining the Same Factual Questions on the Same Evidence**

Every Lanham Act claim Alcantar asserts depends on a single, dispositive predicate: that he is the sole owner of valid, exclusive rights in the marks CODICIADO and GRUPO CODICIADO. If those marks instead belong to the collective *Sociedad de Hecho* formed in 2015 and continuously used since that time, then Alcantar's claims for trademark infringement, dilution, unfair competition, and declaratory relief fail at the threshold.

Defendants' counterclaims rest on the opposite proposition: that Alcantar was never the sole owner and never held exclusive rights in the marks.

These are precisely the questions now before the IMPI. (Richards Decl. ¶ 4, Ex. "A" at Facts ¶¶ 1, 3-4, 6 and Fourth Ground for Nullity [IMPI Petition]; Barrios Decl. ¶¶ 8, 17).

The IMPI is examining whether the mark CODICIADO was used collectively by the de facto partnership years before Alcantar's July 2023 Mexican registration application, the same question that lies at the heart of Defendants' lack-of-ownership counterclaim. The

---

10

SINGH, SINGH & TRAUBEN, LLP

IMPI is also examining the October 21, 2016 Rancho Humilde recording contract, which defines "El Artista" as all five members collectively, the same contract Alcantar himself introduced as Exhibit B in his AAA arbitration and that forms the core of Defendants' fraud-in-procurement counterclaim. IMPI is further examining the public evidence of collective commercial use on streaming platforms from 2015 forward, the same evidence that supports Defendants' position that the marks represent collective, not individual, goodwill.

The two proceedings do not merely overlap in subject matter. They rest on the same evidentiary record and turn on the same foundational questions of ownership, first use, and fraudulent procurement.

**(2)     The False Declaration Contradiction Lies at the Heart of Both Proceedings**

The most direct and compelling connection between the IMPI proceeding and this case is Alcantar's false declaration regarding use of the mark. This contradiction is not peripheral. Rather, it goes to the core of Defendants' fraud-in-procurement counterclaim.

In his July 2023 application for Mexican Trademark Registration No. 2642296, Alcantar affirmatively declared that he had "not used" the mark CODICIADO. (Richards Decl. ¶ 4, Ex. "A" at Fourth Ground for Nullity [IMPI Petition]). That declaration is demonstrably false. On November 27, 2024, Alcantar filed a Demand for Arbitration against Rancho Humilde before the American Arbitration Association, in which he introduced the October 21, 2016 recording contract as Exhibit B, the very contract that establishes continuous commercial exploitation of the mark GRUPO CODICIADO since at least October 2016. (Richards Decl. ¶ 5, Ex. "C" [AAA Demand]; ECF 67, Counterclaim ¶¶ 11, 15). The IMPI proceeding will determine whether that declaration of non-use was false. If IMPI finds that it was, that determination will directly inform Defendants' claim that Alcantar made material misrepresentations regarding first use when procuring his U.S. registrations.

This determination is directly relevant here. Defendants' fraud counterclaim alleges that Alcantar made material misrepresentations to the USPTO regarding ownership, exclusive rights, and first-use dates, all of which claim first use as early as February 11, 2013. [ECF 67, *Counterclaim* ¶¶ 13–16]. If IMPI finds that the mark was first used collectively in 2015 and 2016, not by Alcantar individually in 2013, that finding will directly inform and likely resolve key factual issues underlying Defendants' cancellation counterclaims. IMPI's examination of Alcantar's false-declaration conduct therefore goes to the heart of the fraud claim pending before this Court.

### (3)    IMPI's Decision May Materially Simplify or Resolve Key Issues Before This Court

A stay is especially appropriate where, as here, the outcome of a related proceeding may materially simplify or resolve issues before the Court. *Landis*, 299 U.S. at 256. Here, the IMPI proceeding has the potential to meaningfully simplify this case in at least three concrete respects.

If IMPI grants nullity on the false-declaration ground, it will have made a specific finding that Alcantar's declaration of non-use in his Mexican trademark application was false, the same misrepresentation Defendants allege infected his USPTO filings. That finding would substantially bolster Defendants' fraud-in-procurement counterclaim and could effectively resolve a key factual predicate underlying the U.S. cancellation claims.

If IMPI grants nullity on the prior-collective-use ground, it will have determined that the marks were used collectively by the de facto partnership since 2015. That finding would directly address the central ownership question in both Defendants' lack-of-ownership counterclaim and Alcantar's infringement claims.

Even if IMPI were to uphold the Mexican registration, its factual findings on prior use, ownership, and the truthfulness of Alcantar's declarations, developed on substantially the same core evidence (Public Deed No. 9,066, the 2016 recording contract, and streaming/media evidence), would still provide this Court with a considered administrative record that narrows the disputed factual issues. The Court need not await a formally

preclusive foreign decision before granting a stay. *Landis* requires only that the related proceeding may simplify or narrow the issues, not that it will control the outcome. The IMPI proceeding plainly meets that standard.

### B.      The Balance of Hardships Strongly Favors a Stay

#### (1)      Defendants Face Concrete and Substantial Hardship Absent a Stay

Absent a stay, Defendants will be required to litigate these same foundational questions of ownership, prior collective use, and fraudulent procurement in this Court while the other members of the musical collective pursue adjudication of those identical issues before IMPI. This parallel litigation on a substantially shared evidentiary record would create duplicative burdens and a material risk of inconsistent factual determinations.

The witnesses most critical to these threshold issues are the other founding members of Grupo Codiciado and individuals with knowledge of the group's formation and early commercial operations. These witnesses are located in Mexico. Requiring these witnesses to participate in U.S. discovery and depositions while they are simultaneously involved in or directly affected by the pending IMPI proceeding would create duplicative and avoidable burdens on both the witnesses and the parties.

More fundamentally, parallel litigation creates a substantial risk of inconsistent factual findings on issues that are dispositive to both proceedings. If this Court makes determinations regarding ownership and prior use while the IMPI simultaneously examines the same questions on the same core evidence, including Public Deed No. 9,066, the 2016 Rancho Humilde recording contract, and evidence of collective commercial use since 2015, divergent findings would leave the parties without a clear or consistent record. Such inconsistency would not resolve the underlying dispute. It would only deepen it. This risk is not speculative. Rather, it is the predictable result of two tribunals examining the same documents and the same witnesses on the same questions at the same time.

///

///

///

### (2)   Alcantar Faces No Material Prejudice from a Temporary Stay of Reasonable Duration

Alcantar will suffer no material prejudice from a stay of reasonable duration. His claimed trademark rights are not extinguished by a stay. Rather, they remain fully preserved pending the outcome of the IMPI proceeding. Moreover, because the IMPI proceeding is already pending and Alcantar is the named respondent, he is obligated to participate in that proceeding regardless of whether this Court grants a stay. Any evidence relevant to this action can be preserved through stipulation or court order. Most importantly, the IMPI proceeding will produce a factual record developed on substantially the same evidence that is before this Court, irrespective of its ultimate outcome.

Alcantar may argue that he will suffer irreparable harm from ongoing infringement during the pendency of a stay. That contention is significantly undermined by this Court's prior denial of his application for a temporary restraining order, which rested in part on his failure to demonstrate irreparable harm sufficient to justify extraordinary relief. [ECF 30]. Any alleged harm arising from Defendants' commercial activities does not rise to the level of imminent, irreparable injury that would make a temporary stay of reasonable duration inequitable. As this Court and the Ninth Circuit have recognized, irreparable harm must be likely rather than merely possible, and speculative injury is insufficient to support preliminary injunctive relief. See *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (irreparable harm must be "likely," not merely possible); *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("[s]peculative injury" is insufficient; a plaintiff "must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief).

Considering that trial is not scheduled until March 22, 2027, and the IMPI proceeding was only recently initiated, a stay of reasonable duration, conditioned upon the filing of a status report following IMPI's decision, poses no material risk to Alcantar's ability to litigate his claims. The balance of hardships strongly favors a stay.

///

## C.     A Stay Will Serve the Orderly Course of Justice

The third *Landis* factor asks whether a stay will serve the orderly course of justice by simplifying the issues, proof, and questions of law before the Court. Here, it will.

IMPI is not a court of general jurisdiction. It is the specialized administrative authority established by the Mexican government to adjudicate the validity of Mexican trademark registrations. Here, the central question before IMPI is whether the mark CODICIADO was created and used by a five-member *Sociedad de Hecho* formed in Tijuana in 2015, or whether it belonged solely to Alcantar. IMPI is uniquely positioned to resolve that question under Mexican law based on the evidence of the group's collective formation and commercial activities.

In evaluating whether Registration No. 2642296 was validly issued, IMPI will necessarily examine and make findings on the very questions that lie at the center of Defendants' counterclaims, including ownership, prior collective use, and the truthfulness of Alcantar's declarations.

Having this Court and IMPI simultaneously adjudicate the same foundational issues on substantially the same evidence runs counter to the principles of orderly judicial administration. If IMPI determines, as the petition and the record suggest, that the mark was first used collectively in 2015 and 2016 rather than individually in 2013, and that Alcantar obtained the Mexican registration through a false declaration, this Court will have expended considerable time and resources developing a factual record on those exact issues, only to then confront IMPI's considered administrative findings. Divergent rulings on these core questions would not promote orderly justice. Rather, they would undermine it.

The orderly course of justice is best served by permitting the IMPI, the specialized administrative authority with expertise in Mexican trademark validity and direct access to the full administrative record, to reach its determination first. This Court can then address the claims before it with the benefit of the IMPI's findings on ownership and prior use,

SINGH,
SINGH &
TRAUBEN,
LLP

15

MEMORANDUM OF POINTS AND AUTHORITIES

thereby promoting consistency between the two proceedings and conserving judicial resources.

### D.      Comity Considerations Further Support the Stay

International comity reflects "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens, or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 163–64 (1895). Although comity does not require this Court to defer to the IMPI or to treat an IMPI decision as binding, it remains a legitimate factor in the exercise of the Court's discretion to stay proceedings and independently supports the relief Defendants seek.

IMPI is the specialized administrative authority established by Mexico to determine the validity of Mexican trademark registrations. It is currently exercising that authority with respect to Registration No. 2642296, the Mexican counterpart to the U.S. registrations at the center of this dispute. The underlying events giving rise to both proceedings, including the formation of Grupo Codiciado in Tijuana, the collective commercial activities of the de facto partnership from 2015 to 2021, and Alcantar's subsequent decision to seek individual trademark registrations, are centered in Mexico and involve Mexican parties and conduct governed by Mexican law. IMPI is the institutional body best positioned to examine those facts under Mexican law.

Defendants do not contend that this Court must defer to the IMPI, that Mexican law governs U.S. trademark rights, or that an IMPI decision would bind this Court. Principles of international comity nonetheless support a temporary stay. Granting such a stay would allow each tribunal to perform its institutional function without unnecessary duplication of effort or the risk of inconsistent factual determinations on the same record. This measured sequencing respects comity while advancing the same considerations that underlie the *Landis* factors.

///

///

## V.   CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court exercise its inherent authority under *Landis v. North American Co.*, 299 U.S. 248 (1936), to stay all proceedings in this action pending resolution of the parallel administrative nullity proceeding before the IMPI.

A stay is warranted under each of the *Landis* factors. This Court and IMPI would otherwise simultaneously adjudicate the same threshold questions of ownership, prior collective use, and fraudulent procurement on substantially the same evidentiary record. This includes Public Deed No. 9,066 (which memorializes the five members' formation of the *Sociedad de Hecho* in 2015), the October 21, 2016 recording contract, and evidence of collective commercial use since 2015. This parallel litigation creates a meaningful risk of inconsistent factual findings and determinations on issues central to both Plaintiff's claims and Defendants' counterclaims.

By contrast, Alcantar will suffer no material prejudice from a temporary stay of reasonable duration. His rights remain fully preserved, he is already obligated to participate in the IMPI proceeding as the named respondent, and trial in this action is not scheduled until March 2027. Moreover, because the underlying events giving rise to this dispute, including the formation of the *Sociedad de Hecho* in Tijuana and Alcantar's subsequent individual registrations, are centered in Mexico and governed by Mexican law, the orderly course of justice and principles of international comity strongly favor allowing the IMPI, the specialized administrative body charged with determining the validity of Mexican trademark registrations, to address these questions of ownership and prior use under Mexican law in the first instance.

Accordingly, Defendants respectfully request that the Court enter an order:

1.   Staying all proceedings in this action, including discovery and all pretrial deadlines, pending issuance of a final decision by IMPI in the administrative nullity proceeding challenging Registration No. 2642296;

SINGH, SINGH & TRAUBEN, LLP

17

MEMORANDUM OF POINTS AND AUTHORITIES

2.   Directing the parties to file a joint status report within fourteen (14) days of any IMPI decision, advising the Court of the decision's substance and proposing a schedule for further proceedings; *and*

3.   Scheduling a status conference at the earlier of February 27, 2027, or thirty (30) days following the filing of the joint status report.

**DATED:** May 26, 2026

Respectfully submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS**

By:  */s/ Thomas K. Richards*
    Thomas K. Richards

***Attorneys for Defendants/Counterclaimants***
RANCHO HUMILDE ENTERTAINMENT, LLC,
JAIME (JIMMY) HUMILDE, ROQUE
VENEGAS *and* JOSE (JB) BECERRA

SINGH,
SINGH &
TRAUBEN,
LLP

18
MEMORANDUM OF POINTS AND AUTHORITIES

The undersigned, counsel of record for defendants certifies that this memorandum of points and authorities contains 5,733 words, which complies with the word limit of L.R. 11-6.1.

**DATED:** May 26, 2026

Respectfully submitted,

**SINGH, SINGH & TRAUBEN, LLP**
**THOMAS K. RICHARDS**

By:   */s/ Thomas K. Richards*
       Thomas K. Richards

***Attorneys for Defendants/Counterclaimants***
RANCHO HUMILDE ENTERTAINMENT, LLC, JAIME (JIMMY) HUMILDE, ROQUE VENEGAS *and* JOSE (JB) BECERRA

SINGH, SINGH & TRAUBEN, LLP

MEMORANDUM OF POINTS AND AUTHORITIES